FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

2016 JAN 25   AM 11:35

DENA MOORE

PLAINTIFF,

Vs.    $\mathcal{N}^{b}$

COGNIZANT **Inc.** TECHNOLOGY Solutions
and WALT DISNEY WORLD

DEFENDANTS.

CASE NO.:

6.16-CV-113-ORL-28KRS

**CLASS ACTION ALLEGATIONS**

**JURY TRIAL DEMANDED**

## VERIFIED CLASS ACTION COMPLAINT AGAINST COGNIZANT **Inc.** AND WALT DISNEY WORLD

Plaintiff, DENA MOORE ("Plaintiff"), by and through undersigned counsel, hereby

brings this nationwide class action on behalf of herself and similarly situated persons,

who, like Plaintiff, were caused injury by the Defendants, COGNIZANT **Inc.** TECHNOLOGY Solutions

(COGNIZANT) and WALT DISNEY WORLD ("DISNEY"), and states as follows:

### JURISDICTION AND VENUE

1.    This Court has jurisdiction over the subject matter of the causes of action in this

Complaint by virtue of:

(A)    federal question jurisdiction pursuant to 28 U.S.C. Section 1331, involving an

action pursuant to 18 U.S.C. Sections 1964(c), the Federal Racketeer Influenced and

Corrupt Organizations Act ("RICO"). This Court has subject-matter jurisdiction over this

action pursuant to 28 U.S.C. §1332;



#400
TPA 034530

1

(B)   diversity jurisdiction pursuant to 28 U.S.C. Section 1332(a)(1), involving an action between citizens of diverse states with an amount in controversy in excess of seventy-five thousand dollars ($75,000.00), exclusive of interest and costs;

(C)   supplemental jurisdiction pursuant to 28 U.S.C. Section 1367(a), involving claims that are so related to claims in the action within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution; and

2.   This Court has jurisdiction over the persons of the Defendants because each Defendant either resides or transacts business within this judicial district; and each Defendant is amenable to service of process within the meaning of Federal Rule of Civil Procedure 4(e), 4(f), and 18 U.S.C. Section 1965(b).

3.   Venue is proper in this district pursuant to 18 U.S.C. Section 1965 and 28 U.S.C. Section 1391 because Defendants either reside or transact business in this district or, alternatively, this district is where a substantial part of the events or omissions giving rise to the claim occurred.

## PARTIES

4.   Plaintiff, Dena Moore, is a resident of Orlando, Florida.  Class members are citizens of different states.

5.   Defendant, COGNIZANT, is authorized and doing business within this judicial district.

6.   Defendant, DISNEY, is authorized and doing business within this judicial district.

## GENERAL ALLEGATIONS AND FACTS

7.   Plaintiff has satisfied all conditions precedent.

2

8.      Plaintiff has hired the undersigned attorney and agreed to pay all fees and costs related to this matter.

9.      Plaintiff requests a jury trial for all issues so triable.

**H1B Program and Applications**

10.     The US Government introduced the H1B visa program to offer and enable skilled International Professionals and International Students from all over the world the opportunity to live and work in the USA. The H1B is the most popular and sought after US work visa and US Immigration requires 'every' foreign national to obtain a visa in order to legally work in America.

11.     The regular application process for a H1B visa is as follows:

**A.**      Offer & Acceptance of H1B Employment - H1B Sponsoring Company files a Petition

An employer can be an individual, partnership or corporation. Applications are "job specific." The visa is only valid for work with the employer that filed the original petition. The USCIS requires employment letters which provide specific information addressing the positions held; the exact duties of the position; the exact dates of employment; and information regarding the supervisors and co-workers of the beneficiary.

**B.**      The 'Prevailing Wage' and actual wage must be determined and compared. The H1B sponsoring company is required to pay the higher of the two. The prevailing wage is determined by the State Employment Security Agency by completing a special form, which asks the employer for the responsibilities, skills and experience needed for the job. The actual wage is determined by comparing other workers in the same positions with the same level of experience.

C.    Documents to Be Filed.

ETA Form 9035/9035E- Labor Condition Application- (LCAs)

This form, along with the ETA Form 9035-CP, Instructions, is attached as Exhibit

1. The Instructions provide, in relevant part, as follows:

**Anyone, who knowingly and willingly furnishes any false information in the preparation of ETA Form 9035 or 9035E and any supporting documentation, or aids, abets, or counsels another to do so is committing a federal offense, punishable by fine or imprisonment up to five years or both (18 U.S.C. §§ 2, 1001). Other penalties apply as well to fraud or misuse of this immigration document and to perjury with respect to this form (18 U.S.C. §§ 1546, 1621 (perjury)). ETA Form 9035CP, page 1.**

Every sponsoring employer must agree to labor condition statements, para. **H (2) which state that the employer will provide working conditions which will not adversely affect the working of conditions of workers similarly situated.** Moreover, every sponsoring employer which is deemed to be a H-1B dependent, such as HCL,[1] must also certify to the requirements of Section I., as follows:[2]

I.    b. Subsection 2- A. Displacement: *that their hiring of a H1B employee*

*will not cause displacement of the U.S. workers in the employer's*

---

[1] See 9035CP, Section I, a. Subsection 1, question 1

[2] See 9035CP, Section I, a. Subsection 1- All employers that are (1) H-1B dependent (as defined above) **and/or** (2) have been found to have committed a willful violation or a misrepresentation of a material fact during the five (5) year period preceding the date of this application (and after October 20, 1998), must read and agree to statements (A) through (C) below and demonstrate that agreement by marking "Yes" in Subsection 2 of Section I of this application.

*workforce: B. Secondary Displacement, the hiring will not cause displacement of U.S. workers in another employer's workforce; and C. the hiring will not affect the recruitment of U.S. workers and hiring of U.S. workers who are equally or better qualified that the H 1-B workers.* See Section I. [3]

Therefore, in summary, COGNIZANT, believed to be a H-B dependent employer, must sign and agree to the Employer Labor Condition Statements in Section H, and I, and sign Section K., Declaration of Employer in which the sponsoring employer attests that the labor condition statements are true and accurate, and attests that the "making of fraudulent representations on this Form can lead to civil or criminal action under 18 U.S.C. § 1001, 18 U.S.C. § 1546, or other provisions of law."

When the LCA is approved, the Department of Labor (DOL) will return a certified copy to the H1B sponsoring company, and the employer can file the H1B visa petition.

### ETA Forms 750A and 750B (Alien Employment Certification Form)

These forms are attached as Exh. 2 and 3. Sponsoring employers signed the ETA Form 750, under penalty of perjury with the following quote clearly posted above the signature line, "Pursuant to 28 U.S.C. 1746, I declare under penalty of perjury the foregoing is true and correct." The ETA Form 750, Employer Certification, Section 23, asserts that the company (HCL in this particular case) swears the position is open to

---

[3] There are additional attestation requirements required by 20 C.F.R. § 655.736-.739. for H-1B Dependent employers, but HCL appears to be relieved of these additional requirements because additional attestation requirements do not apply to LCAs filed by the employer solely for the employment of an "exempt" H-1B nonimmigrant," who is an H-1B worker who earns at least $60,000 per year or holds a Master's degree or higher in a field related to the intended area of employment.

any qualified. ETA Form 750 Section 23 asserts "By virtue of my signature below, I HEREBY CERTIFY the following conditions of employment." "(h) The job opportunity has been and is clearly open to any qualified U.S. worker." ETA Form 750 Section 32 also requires the company to certify that a condition of employment is that "(e) The job opportunity does not involve unlawful discrimination by race, creed, color, national origin, age, sex, religion, handicap, or citizenship."

### COGNIZANT's and DISNEY's Conspiracy To Displace U.S. Workers

12.    Plaintiff alleges that in October 2014 she and about 200-300 other DISNEY employees who are U.S. workers and worked in the DISNEY IT department were told by DISNEY management to begin to train hundreds of H1B visa-holders.  Plaintiff and the other employees were told by DISNEY management that they were being fired on January 30, 2015, but they had 90 days to train the visa-holders as their replacements. Plaintiff alleges that she and the other DISNEY IT employees were told that if they did not stay and train they would not get a bonus and severance, which most employees reluctantly accepted.   The severance agreement did not require the employees to sign away their rights to sue DISNEY, or speak of the severance. Although DISNEY management told the Plaintiff and other 200-300 employees that there were job openings for them, very few (only a couple) employees were rehired after being fired on January 30, 2015.

13.    Some terminated DISNEY employees were told that they were blackballed from working at DISNEY in any capacity for at least a year.    One putative class member, Mr. Keith Barrett, who worked in a technical position at Disney and was terminated during this displacement of workers, received an e-mail from a recruiter on February 12,

2015, stating that he could not be rehired in another technical position at DISNEY for one year.  This occurred although Mr. Barrett will aver that he was extremely qualified for the position he sought.  The recruiter stated in their e-mail that they had just learned of this "rule" change from DISNEY.

14.     After receiving notification of her dismissal, Plaintiff specifically applied for multiple jobs with DISNEY for which she was qualified, and after interviews with DISNEY management, she was told she was not selected.  Plaintiff states that she was DISNEY management stated that the jobs would be only for the H1B visa-holders and not U.S. workers.

15.     Plaintiff was told by the HB1 visa-holders she was training that they were being sponsored by COGNIZANT.  Pursuant to a contract between COGNIZANT and DISNEY, these visaholders were leased or contracted for employment with DISNEY. Plaintiff alleges that once the H1B visaholders were trained, she, along with approximately 200-300 DISNEY U.S. workers, were terminated from employment on January 30, 2015.

16.     Because of the direct knowledge that COGNIZANT was acting as a sponsoring employer of at least hundreds of H1B visaholders, COGNIZANT would have had to complete and file with the federal government at least hundreds of individual Immigration Foreign Labor Certifications for H1B visas, i.e., the ETA Form 750(A) and 750(B), and hundreds of individual LCAs, i.e., Form 9035 and 9035A.  Copies of the labor certifications filed by COGNIZANT in connection with DISNEY are the subject of a FOIA request with the U.S. Department of Labor.

17.     As mentioned, because of Plaintiff's first-hand knowledge that at least hundreds

of H1B visa-holders were being sponsored by HCL and were being contracted to

DISNEY, HCL must have signed and swore under oath on LCAs Forms 9035 and

9035E that the working conditions of similarly situated workers would not be adversely

affected and/or U.S. workers would not be displaced. Information show that nationwide,

each year, HCL files many (at least, hundreds) foreign Labor Certifications and LCAs.

18.     Plaintiff alleges that she had numerous conversations with COGNIZANT

sponsored H 1-B visaholders whom she trained, and alleges that, based on these

conversations, he knew that DISNEY would terminate (and not re-hire) the American

workers with the job duties taken over by COGNIZANT H1B visa holders.  Plaintiff has

the names of H1B visaholders who replaced the U.S. workers. COGNIZANT paid the

H1B visaholders during the training period in which the American workers employed by

DISNEY trained the H1B visa holders.

19.     Plaintiff alleges and news reports and research document that the program to

adversely affect the working conditions of similarly situated workers by displacement of

DISNEY workers and replacing them with less qualified but cheaper foreign workers

contracted from COGNIZANT was and has been directed by a senior DISNEY

manager, Mr. Tilak Mandadi, DISNEY's SVP, CIO, and Global Principal Tech Officer.

Mr. Mandadi's Linked-In page reveals that in 2010 (and possibly other years) he worked

for American Express as a Senior Vice-President of Information Technology.  The

Linked-In page also states that prior to American Express, Mr. Mandadi worked, in 2009

(and possibly other years), as V-P of Information Technology at Fed Ex Kinkos; and

worked before those years as Director of Information Technology at Dell and Enron

companies. Plaintiff alleges that upon information and belief that while Mr. Mandadi worked at senior positions with these companies, these companies contracted with sponsoring employers such as HCL (and the like) to replace IT workers with H1B visaholders.

20.     COGNIZANT and DISNEY have a written contract which covers the scope of the duties and projects.   This contract is not publicly available.  Plaintiff alleges that on information and belief, it is a long-term contract, has spanned at least two years to date (from year 2014 to the present), and embodies the agreement to contract hundreds of H1B visaholders to DISNEY over a multi-year period.

21.     The contractual relationship between COGNIZANT and DISNEY is ongoing. Based on the Plaintiff's statements and his testimony that 200-300 U.S. workers on January 30, 2015, were summarily terminated once completing training of the visaholders, it is believed that this is COGNIZANT's and DISNEY's regular way of conducting business. Thus, COGNIZANT knew, or consciously avoiding the fact, DISNEY would intentionally adversely affect the working conditions of similarly situated workers by terminating American workers and immediately replacing the American workers with COGNIZANT's H1B workers, in direct contradiction to Section **H (2) which states that the employer will provide working conditions which will not adversely affect the working of conditions of workers similarly situated.** Termination of similarly situated workers is a patent adverse effect of the working conditions. Moreover, it is a direct contravention of COGNIZANT's representations under oath in the ETA Form 9035/9035E that American workers would not be displaced.

22.    Plaintiff alleges that prior displacements have occurred, and subsequent lay-offs and displacements will occur unless the Defendants are forced to cease their illegal business practices.

23.    Plaintiff has specific standing to bring the claims alleged in this Complaint because Plaintiff was directly affected by COGNIZANT and DISNEY's violations of federal and state law, respectively.  Plaintiff was a U.S. employee of DISNEY and was similarly situated as the COGNIZANT H1B employee who took Plaintiff's job after Plaintiff was terminated as a direct result of the racketeering activity.  Plaintiff trained COGNIZANT hired H1B employees, then she was terminated. The COGNIZANT H1B employees she trained immediately took over her job duties after her termination.

24.    Over the past two years, hundreds of American DISNEY workers were fired from their positions with their companies and were immediately replaced by COGNIZANT H1B workers with the specific knowledge of COGNIZANT of such actions.

### Violations of 18 U.S.C. § 1546

25.    18 U.S.C. § 1961(1) includes section 1546 as a RICO predicate crime ("fraud and misuse of visas, passports, and other documents"). Section 1546 proscribes criminal violations when, in relevant part:  Whoever knowingly makes under oath, or as permitted under penalty of perjury under section 1746 of title 28, United States Code, knowingly subscribes as true, any false statement with respect to a material fact in any application, affidavit, or other document required by the immigration laws or regulations prescribed thereunder, or knowingly presents any such application, affidavit, or other document which contains any such false statement or which fails to contain any reasonable basis in law or fact (emphasis added).  False statements and false

attestations relating to material facts (such as that the working conditions of similarly situated workers would not be adversely affected and the non-displacement of American workers provisions) on the labor certification forms 750A and B, and the LCAs 9035 and 9035E constitute fraud and misuse of immigration documents and would violate section 1546.

## CLASS ACTION ALLEGATIONS

26.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action against Defendants as a national class action for itself and all members of the following Class of all others similarly situated ("Class Members"):

27.    All American individuals who were employed by DISNEY who were terminated and immediately replaced by foreign workers who were H1B visaholders and whom COGNIZANT falsely certified on ETA Forms 750(A) 750(B) and 9035 and 9035E that the working conditions of similarly situated employees would not be adversely affected and/or that the job opportunity is open to any qualified U.S. worker when COGNIZANT knew, consciously avoided the fact, and/or conspired with DISNEY that DISNEY would adversely affect similarly situated employees and displace such workers and immediately replace them with H1B visaholders.

28.    Excluded from the Class are Defendants; the Co-Conspirators; any entity in which any Defendant or Co-Conspirator has a controlling interest; the members, officers, directors, shareholders, agents and legal representatives of COGNIZANT and DISNEY, and the Court and Court personnel.

29.    There are hundreds of Class Members, who are so numerous and geographically dispersed that their joinder is impracticable. The precise number and identities of

Class Members are currently unknown to Plaintiff, but can be derived from the employment records of COGNIZANT and DISNEY and documents filed with the DOL.

30. There are questions of law and fact common to the Class as a whole that predominate over any questions affecting only individual Class Members including, *inter alia:*

a. whether Defendants' above-described wrongful actions violated 18 U.S.C. § 1962(c) and/or (d);

b. whether Defendants' above-described wrongful actions, constituted conspiracy at common law;

c.. whether Plaintiff and Class Members sustained damages because of Defendants' above-described wrongful actions;

d. whether Plaintiff and Class Members are entitled to recover actual damages, consequential damages, incidental damages, and/or RICO treble damages, and pre- and post-judgment interest, and attorneys' fees; whether Plaintiff and Class Members are entitled to disgorgement and/or other forms of equitable relief; injunctive relief and in what form.

31. Plaintiff's claims are typical of Class Members' claims because Plaintiff and Class Members are all victims of Defendants' above-described wrongful actions.

32. Plaintiff and her counsel will fairly and adequately represent the interests of Class Members. Plaintiff has no interests antagonistic to, or in conflict with, any of the Class Members' interests. Plaintiff's lawyers are experienced in prosecuting class actions and complex commercial litigation, including successful class actions asserting RICO and violations.

33.    A class action is superior to all other available methods for fairly and efficiently adjudicating Plaintiff's and Class Members' claims. Plaintiff and Class Members have been irreparably harmed as a result of Defendants' above-described wrongful actions. Litigating this case as a class action is appropriate because (i) it will avoid a multiplicity of suits and the corresponding burden on the courts and Parties, (ii) it would be virtually impossible for all Class Members to intervene as parties-plaintiff in this action, (iii) it will allow numerous individuals and entities with claims too small to adjudicate on an individual basis because of prohibitive litigation costs to obtain redress for their injuries, and (iv) it will provide court oversight of the claims process once Defendants' liability is adjudicated.

34.    Certification of the Class is appropriate under Fed. R. Civ. P. 23(b)(3) because the above common questions of law or fact predominate over any questions affecting individual Class Members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

35.    Defendants' wrongful actions are generally applicable to the Class as a whole, for which Plaintiff seeks, *inter alia,* damages and equitable remedies.

36.    Absent a class action, Defendants will retain the benefits of their wrongdoing despite their serious violations of the law and infliction of harm on Plaintiff's and Class Members' businesses and property.

## CLAIM I:  VIOLATION OF CIVIL-RICO; 18 USC § 1962(c) AGAINST COGNIZANT

37.    Paragraphs 1 through 36 are reasserted and reaffirmed herein.

38.   At all times material hereto, Defendant, COGNIZANT was a "person" as defined by 18 USC 1961(3) in that it is capable of holding a legal or beneficial interest in property.

## THE ENTERPRISE

39.   At all relevant times, COGNIZANT and DISNEY associated in fact with each other, and with others known and unknown, so as to constitute an "enterprise" within the meaning of 18 U.S.C. Sections 1961(4).  At all times relevant to this Complaint, the enterprise was engaged in, and its activities affected, interstate and foreign commerce, *e.g.*, COGNIZANT sponsored H1B visaholders to travel from foreign countries for work at U.S. companies, including DISNEY; and DISNEY is a multi-national company which sponsors, among other things, theme parks attracting the travel of international visitors, and a company which contracts for the purchase and sale of numerous goods and services in interstate and foreign commerce.

40.   The "association in fact" enterprise, the "COGNIZANT-Disney Enterprise," existed apart from its predicate acts.  As explained below, the enterprise had the requisite "structural features," i.e., a purpose, relationships among those associated with the enterprise and longevity sufficient to permit these associates to pursue the enterprise's purpose. *Boyle v. United States*, 129 S.Ct. 2237, 2244 (2009), also holding that the finding of an "association in fact enterprise" is to be liberally construed and such association does not require the existence of any business-like attributes.  Each Defendant is distinct and separate from the association-in-fact enterprise of which they are a component part. Each company associated with the enterprise through its involvement in the underlying

14

racketeering offenses as well as through the continuous concealment and promotion of the activities of the enterprise.

41.    The "COGNIZANT-Disney Enterprise" existed for a common purpose, i.e., for the economic benefit and gain of its participant entities. COGNIZANT falsely and fraudulently attested that there would be no adverse affect to workers similarly situated and/or there would be non-displacement of U.S workers in the employer's workplace. See Form 9035, Section H, I, and K, while COGNIZANT knew, or consciously avoided the fact, because of past dealings with Mr. Mandadi and past practices with DISNEY that DISNEY would be immediately displacing U.S. workers once the H1B visaholders were trained which patently qualifies as an adverse affect of the working conditions of similarly situated workers.   COGNIZANT knew of the discharges, or consciously avoided the fact that DISNEY would discharge U.S. workers because of its past practices with DISNEY, and its business model would only be viable if it could contract with willing recipient companies, such as DISNEY, to hire large number of visaholders with the resulting displacement of U.S. workers.

42.    Thus, the large number of hirings and resulting illegal firings created an economic interdependence between COGNIZANT and Disney so as to create an association-in-fact, "the COGNIZANT-Disney Enterprise."   Officials of each company engaging in the violations were not only conducting the affairs of their respective companies through the commission of section 1546 violations, but were involving themselves in the affairs of each company through the plan to hire large numbers of H1B workers, lease them to the recipient company (Disney), who would then have agreed to displace U.S. workers (adversely affecting the working conditions of those similarly situated workers).

43.     As a result, in furtherance of the enterprise, COGNIZANT committed numerous racketeering acts by attesting to false statements on the ETA Forms 9035, Sections I, H, and K, in violation of Section 1546, with the knowing agreement by DISNEY who contracted with COGNIZANT to hire the visaholders and then knowingly and willingly terminate its U.S. workers once the H1B visaholders were trained which was an adverse affect on the working conditions of similarly situated workers. This arrangement mutually benefitted both COGNIZANT and DISNEY, who could then hire the H1B visaholders contracted to DISNEY by COGNIZANT, who were eligible to apply for Green Cards (legal permanent resident) at a much lower wage and salary. By virtue of these roles, each Defendant conducted or participated, directly or indirectly, in the conduct of the affairs of the other company and in the affairs of the resulting COGNIZANT-Disney Enterprise.

### THE RACKETEERING VIOLATION

44.     From on or about a time unknown, and continuing over at least a two year period to the present time, COGNIZANT, aforementioned Defendant, a person associated with, or employed by the Enterprise, did knowingly and unlawfully conduct or participate, directly or indirectly, in the affairs of the Enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(1) and § 1961(5), all in violation of 18 U.S.C. § 1962(c).

45.     Plaintiff alleges that COGNIZANT engaged in the attesting of false statements on ETA Forms 750A and 9035/9035E, for the purpose of completing H1B visas for hundreds of foreign workers when COGNIZANT knew, or consciously avoided the fact, that DISNEY would be adversely affecting the working conditions of similarly situated employees by discharging such U.S. workers when it contracted with COGNIZANT for large numbers of H1B visaholders.

46. Plaintiff alleges that these activities constitute fraud and misuse of the documents and constitutes conduct committed by and through multiple violations of 18 U.S.C. § 1546, acts indictable as 'racketeering activity," as that term is defined in 18 U.S.C. §§ 1961(1)(B).

## PATTERN OF RACKETEERING ACTIVITY

47.     Plaintiff alleges that the course of conduct engaged in by the RICO Defendant constituted both "continuity" and "relatedness" of the racketeering activity, thereby constituting a pattern of racketeering activity, as that term is defined in 18 U.S.C. § 1961(5). Plaintiff can show the relatedness prong because the predicate acts have the "similar purposes, results, participants, or methods of commission or are related to the affairs of the Enterprise." All predicate acts had the same purpose by COGNIZANT of misrepresenting the nature of the employment of the H1B visaholder in order obtain approvals for such visaholders who could then by leased or contracted with DISNEY.

48.     Plaintiff alleges that the continuity of the pattern of racketeering activity is closed-ended inasmuch as the conduct was a series of repeated conduct of related predicate offenses extending over a multi-year period of time (a substantial period of time) and affecting many hundreds of victims. Moreover, the continuity of the pattern of racketeering can be established under "open-ended continuity" as the predicate offenses are part of the COGNIZANT-Disney Enterprise's regular way of doing business, and/or where the predicates are attributed to Defendants operating as part of a long-term association that exists for criminal purposes.

## RACKETEERING ACTS

49.    Within the Middle District of Florida, and elsewhere, from date unknown but for a multi-year period beginning in 2014 and continuing to the present time, the Defendant COGNIZANT committed multiple racketeering acts in violation of Section 1546, i.e., by making under oath false statements with respect to a material fact in any application, affidavit, or other document required by the immigration laws or regulations, i.e., in ETA Forms 750A and 9035/9035E, and/or by knowingly presenting any such application, affidavit, or other document which contains any such false statement which failed to contain any reasonable basis in law or fact.  Each making of false and fraudulent statement on an individual visaholder's H1B application constituted a separate racketeering act.  This activity has occurred over the past two to four years, and is ongoing. As represented above, documents currently being sought under a FOIA request will provide additional information regarding the specific names and dates of hirings of COGNIZANT H1B visaholders.

50. COGNIZANT has violated the provisions 18 USC § 1962(c) as COGNIZANT conducted and participated, directly and/or indirectly, in the conduct of the affairs of the Enterprise's affairs through a pattern of racketeering activity.

51. COGNIZANT's pattern of racketeering activity has continued for more than two years and continues through the present day.

52. The pattern of COGNIZANT's continual violation of 18 USC §1962(c) has caused injury to hundreds of American workers, including, but not limited to, Plaintiff and other class members.

53. COGNIZANT knowingly attested to false statements knowing such statements were false but subscribing such statements as the truth in violation of 18 USC § 1546.

54. COGNIZANT's false statements were material facts in an application required by immigration law and regulation in violation of 18 USC § 1546.

55. COGNIZANT signed and attested to thousands of labor foreign certification applications that no similarly situated workers working conditions would be adversely affected and, at times, swearing under oath that the job opportunity for the potential H1B worker for which the application was being submitted was clearly open to any qualified U.S. worker when COGNIZANT knew, or consciously avoided the fact, that DISNEY would adversely affect the working conditions of similarly situated employees including termination and that DISNEY would be discharging large numbers of qualified U.S. workers who would not be rehired.

56.    It is likely that COGNIZANT signed and attested to thousands of labor foreign certification applications swearing under oath that the job opportunity did not involve unlawful discrimination by race, creed, color, national origin, age, sex, religion, handicap, or citizenship.

57.    COGNIZANT's contract with DISNEY was ultimately intended to adversely affect the working conditions of the similarly situated workers at DISNEY by terminating American workers and forcing them to train the H1B workers their jobs before the termination. Also, COGNIZANT's contract with Disney was intended to discriminate against the American worker based on race, national origin and, many times, age.

58.    COGNIZANT knew, or consciously avoided the fact, the jobs for which their H1B employees would be filling were already filled with qualified American citizens.

59.    COGNIZANT attested to false and fraudulent information in the execution of the ETA Form 750A and 9035/9035E (Sections H, I and K).

60.     The U.S. workers who were terminated were directly harmed by COGNIZANT's violations of 18 USC §1546.

61.     Plaintiff was specifically and directly harmed by COGNIZANT's violations of 18 USC §1546.  Plaintiff's termination from his job was directly caused by COGNIZANT's violations of 18 USC §1546.

62.     The other 200 to 300 DISNEY workers terminated and whose job duties were taken over by COGNIZANT's H1B workers were also directly harmed by COGNIZANT's violations of 18 USC §1546.

63.     DISNEY U.S. workers terminated from their jobs in the past two (2) years only to have their job duties taken over by COGNIZANT's H1B visa holders were also directly harmed by COGNIZANT's violations of 18 USC § 1546.

64.     COGNIZANT participated in a pattern and practice of hundreds of racketeering activities at the other companies in which it contracted in the past two years with the contracted company terminating American workers and the job duties immediately transferred to COGNIZANT, H1B workers.

**CLAIM TWO**

*[RICO § 1962(d) Conspiracy]*

[Against COGNIZANT and DISNEY]

65.     Paragraphs 1 through 64 are reasserted and reaffirmed herein.

66.     Plaintiff alleges that commencing at a time unknown but from at least year 2014 and continuing to the present time, COGNIZANT and DISNEY, the RICO Defendants, conspired to violate section 1962(c), i.e., each Defendant agreed that a conspirator would conduct or participate in the affairs of the Enterprise through a pattern of racketeering,

i.e., the commission of acts indictable under 18 U.S.C. § 1546, as more fully described in Claim One, all in violation of 18 U.S.C. § 1962(d).

67.     Plaintiff alleges that the conspiratorial objective was for COGNIZANT to misrepresent the nature of the employment of the H1B visaholder in order obtain Department of Labor approvals for such visaholders, who could then be leased or contracted with DISNEY, who would then, knowing that HCL would have made false and fraudulent representations on ETA Forms, would terminate the employment of U.S. workers and hire the H1B visaholders at a much lower wage and salary.  DISNEY upper management, such as Mr. Mandadi, who had extensive experience entering into contracts for H1B visaholders at other companies, knew full well under the H1B visa process that COGNIZANT would have to represent under oath that there would be no adverse affect on the working conditions of similarly situated workers and/or there would be non-displacement of U.S workers in the employer's workplace. See Form 9035, Section I, but yet agreed with COGNIZANT to receive COGNIZANT's visaholders by contract and then immediately after completion of the visaholders' training terminate its U.S. workers from employment – which was a clear adverse affect of the working conditions of similarly situated employees.  Such conspiratorial conduct violates RICO § 1962(d), and such conduct caused direct injury to Plaintiff and similarly situated Class Members.

68.     Each Defendant agreed that at least one conspirator (COGNIZANT and/or DISNEY) would commit multiple racketeering acts, i.e., violations of Section 1546, in the conduct of the affairs of the enterprise.

**WHEREFORE**, Plaintiff prays that the Court would render judgment against Defendants DISNEY and COGNIZANT, for damages, treble damages, costs, and attorney fees.

**CLAIM III:  COMMON LAW CONSPIRACY AGAINST COGNIZANT and DISNEY**

69.     Paragraphs 1 through 68 are reasserted and reaffirmed herein.

70.     Under Florida law, Defendants may be charged with civil conspiracy if there is

1) An agreement between two or more parties;

2) To do an unlawful act or do a lawful act by unlawful means;

3) The doing of some overt act in pursuance of the conspiracy; and

4) Damage to plaintiff as a result of the acts done under the conspiracy.[4]

71.     COGNIZANT and DISNEY have made an agreement to cause COGNIZANT to make false and fraudulent representations of material fact, which is an unlawful act under Florida law.

72.     COGNIZANT and DISNEY have taken overt acts in pursuant of the conspiracy by causing the extreme adverse affect of the working conditions of similarly situated workers, i.e. termination, and/or the displacement of qualified U.S. workers with H1B visaholders contracted by COGNIZANT to DISNEY.

73.     As a result of this conspiracy, the Plaintiff, and similarly situated class members, have incurred damages resulting from their loss of employment.

**WHEREFORE**, with regard to this Claim III, Plaintiff prays that the Court would render judgment against Defendants, COGNIZANT and DISNEY, for damages, treble

---

[4] *See Rey v. Philip Morris*, 75 So.3d 378, 381 (Fla. Dist. Ct. App. 2011)

damages, costs, attorney fees, injunctive relief and other equitable relief authorized by law and jurisprudence.

## JURY DEMAND

Plaintiff demands trial by jury for all issues so triable.

Dated this \_\_\_\_ of Jan.  2016

Respectfully submitted,

Sara Blackwell
Fl. Bar. No. 90443
The Blackwell Firm
sara@theblackwellfirm.com
1800 2nd St. Suite 882
Sarasota, Fl. 34236
(941) 961-3046
Attorney for Plaintiff

**DECLARATION OF VERACITY**

I, _Dena S. Moore_ , declare under penalty of perjury and swear that I reviewed the Complaint and that all facts therein are true and correct to the best of my personal knowledge and any information for which I do not have personal knowledge, I believe to be true.

_Dena S. Moore_
Printed Name

_Dena S Moore_
Signature

_1/13/2016_
Date