## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**DENA MOORE,**

      **Plaintiff,**

**v.**                                                        **Case No:   6:16-cv-113-Orl-31TBS**

**COGNIZANT TECHNOLOGY**
**SOLUTIONS and WALT DISNEY**
**PARKS AND RESORTS U.S., INC.,**

      **Defendants.**

## ORDER

This matter comes before the Court without a hearing on the motions to dismiss filed by Defendant Cognizant Technology Solutions U.S. Corporation ("Cognizant") (Doc. 25) and Defendant Walt Disney Parks and Resorts U.S., Inc. ("WDPR") (Doc. 35), as well as the responses in opposition (Doc. 42, 43) filed by the Plaintiff, Dena Moore, and the replies (Doc. 48, 49) filed by the Defendants.

### I.    Background

According to the allegations of the Complaint (Doc. 1), which are accepted in pertinent part as true for purposes of resolving the instant motions, Moore is a former employee of WDPR's information technology ("IT") department.  (Doc. 1 at 6).  Cognizant is an IT consulting firm. (Doc. 25 at 3).   In January 2015, she and several hundred other WDPR IT workers were fired; their responsibilities were filled by IT workers employed by Cognizant.  (Doc. 1 at 6).  The workers who replaced the Plaintiff and her co-workers were foreign nationals holding H-1B visas. (Doc. 1 at 7)   WDPR management told Moore and her co-workers of their imminent firing more

than 90 days in advance, and informed them that if they did not stay and train the Cognizant IT workers during that period, they would not get a bonus and severance pay.  (Doc. 1 at 6).

Moore contends that, in the process of obtaining H-1B visas for the workers who would eventually replace her and her co-workers, Cognizant made a number of false statements on forms it was required to submit to the federal government.  (Doc. 1 at 11).  She argues that these false statements violated the Racketeer Influenced and Corrupt Organizations Act (henceforth, "RICO"), 18 U.S.C. § 1862.  On January 25, 2016, Moore filed the instant suit, a putative class action.  In the Complaint, Moore asserts three claims: one for a violation of the civil RICO statute (Count I); one for a violation of the RICO conspiracy statute (Count II); and one for common law conspiracy (Count III).  Count I is asserted only against Cognizant, while the other two counts are asserted against both Defendants.

By way of the instant motions, the Defendants seek dismissal of all three counts.

**II.     Legal Standards**

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief" so as to give the defendant fair notice of what the claim is and the grounds upon which it rests, *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957), *overruled on other grounds*, *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  A Rule 12(b)(6) motion to dismiss for failure to state a claim merely tests the sufficiency of the complaint; it does not decide the merits of the case. *Milburn v. United States*, 734 F.2d 762, 765 (11th Cir.1984).  In ruling on a motion to dismiss, the Court must accept the factual allegations as true and construe the complaint in the light most favorable to the plaintiff.  *SEC v. ESM Group, Inc.*, 835 F.2d 270, 272 (11th Cir.1988).  The

Court must also limit its consideration to the pleadings and any exhibits attached thereto.   Fed. R. Civ. P. 10(c); *see also GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993).

The plaintiff must provide enough factual allegations to raise a right to relief above the speculative level, *Twombly,* 550 U.S. at 555, 127 S.Ct. at 1966, and to indicate the presence of the required elements, *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1302 (11th Cir. 2007).   Conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal.   *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

In *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009), the Supreme Court explained that a complaint need not contain detailed factual allegations, "but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.   A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.   Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id*. at 1949 (internal citations and quotations omitted).   "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the plaintiff is entitled to relief.'"   *Id.* at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

### III.     Analysis

The Racketeer Influenced and Corrupt Organizations Act ("RICO" or the "Act"), 18 U.S.C. §§ 1961-68, imposes both criminal and civil liability for "racketeering activity" connected to interstate commerce.   18 U.S.C. § 1962.   Section 1961(1) of the Act defines "racketeering activity" to include, *inter alia*, any act that is indictable under 18 U.S.C. § 1546, which deals with fraud and misuse of visas.   Among other things, 18 U.S.C. § 1546 imposes criminal liability upon anyone who

> **knowingly makes** under oath, or as permitted under penalty of perjury under section 1746 of title 28, United States Code, knowingly subscribes as true, **any false statement with respect to a material fact in any application, affidavit, or other document required by the immigration laws or regulations prescribed thereunder**, or knowingly presents any such application, affidavit, or other document which contains any such false statement or which fails to contain any reasonable basis in law or fact.

18 U.S.C. §1546(a) (emphasis added).

Section 1964(c) of the RICO Act provides a private cause of action for "[a]ny person injured in his business or property by reason of a violation of section 1962." To state a *prima facie* RICO claim under Section1964(c), a plaintiff must establish three elements: first, that the defendant committed a pattern of RICO predicate acts under Section 1962; second, that the plaintiff suffered injury to business or property; and third, that the defendant's racketeering activity proximately caused the injury. *Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702, 705 (11th Cir. 2014).

In the instant case, Moore alleges that Cognizant violated 18 U.S.C. §1546 by making false statements on forms submitted to the U.S. Department of Labor Employment and Training Administration (henceforth, "ETA"). (Doc. 1 at 11). She further alleges that these false statements were predicate acts for purposes of her civil RICO claim. (Doc. 1 at 16). Moore admits that she has not seen any of the forms at issue, but asserts that Cognizant was legally required to submit them as part of the H-1B visa process. (Doc. 1 at 7).

The first type of form allegedly containing false statements was ETA Form 9035, titled "Labor Condition Application for Nonimmigrant Workers" (henceforth, the "LCA"). Moore attached a blank copy of the LCA to the Complaint. (Doc. 1-2 at 12-16). The LCA requires the employer to certify, among other things, that it will "[p]rovide working conditions for nonimmigrants which will not adversely affect the working conditions of workers similarly

employed." (Doc. 1-2 at 14). Moore contends that, because she and her WDPR IT department co-workers were terminated when Cognizant's H-1B visa-holding employees began doing the IT work, the U.S. workers were "adversely affect[ed]" by the nonimmigrants, and therefore Cognizant's certification to the contrary in the LCA was false.

In addition, certain employers that are "H-1B dependent"[1] are required to make the following certifications in the LCA:

> (A) Displacement: The employer will not displace any similarly employed U.S. worker within the period beginning 90 days before and ending 90 days after the date of filing a petition for an H-1B nonimmigrant supported by this application.
>
> (B) Secondary Displacement: The employer will not place any H-1B nonimmigrant employed pursuant to this application with any other employer or at another employer's worksite UNLESS the employer applicant first makes a bona fide inquiry as to whether the other employer has displaced or intends to displace a similarly employed U.S. worker within the period beginning 90 days before and ending 90 days after the placement, and the employer applicant has no contrary knowledge.
>
> …
>
> (C) Recruitment and Hiring: Prior to filing any petition for an H-1B nonimmigrant pursuant to this application, the employer took or will take good faith steps meeting industry-wide standards to recruit U.S. workers for the job for which the nonimmigrant is sought, offering compensation at least as great as required to be offered to the H-1B nonimmigrant. The employer will (has) offer(ed) the job to any U.S. worker who (has) applied and is equally or better qualified that the H-1B nonimmigrant.

---

[1] The regulations define "H-1B dependent employer" as, among other things, one that has at least 51 full-time equivalent employees in the United States and for whom H-1B non-immigrants make up at least 15 percent of its work force. 20 C.F.R. § 655.736(a)(iii). Cognizant does not dispute that it is an "H-1B dependent" employer. (Doc. 25 at 12).

- 5 -

(Doc. 1-2 at 8-9).   Moore asserts that, because she and her WDPR co-workers were replaced by the Cognizant workers, Cognizant must have lied when it made the "displacement" certification in the LCA.   (Doc. 1 at 9).

Cognizant contends that Moore has misunderstood the relevant law, and therefore the LCAs it filed in connection with this matter did not contain false statements.   As to the first alleged false statement in that form – the certification that Cognizant would provide working conditions for the nonimmigrants that would not adversely affect the working conditions of workers similarly employed – Cognizant argues that this only applies to workers employed *by the same employer*.[2]   In other words, the certification would only apply to the working conditions of Cognizant employees, not those of WDPR employees such as the Plaintiff.   The relevant regulations support Cognizant's interpretation:   Pursuant to 20 **C.F.R.** § 655.732(a), the LCA's working conditions requirement

> shall be satisfied when the employer affords working conditions to its H–1B nonimmigrant employees on the same basis and in accordance with the same criteria as it affords **to its U.S. worker employees** who are similarly employed, and without adverse effect upon the working conditions **of such U.S. worker employees**.

Thus, even assuming *arguendo* that the working conditions of WDPR employees were adversely affected when the Cognizant employees were brought in, Cognizant's "working conditions" certification in the LCAs was not false.   The only way for that certification to be false would be if the working conditions of Cognizant's U.S. worker employees were adversely affected.

---

[2] It is also not clear that losing one's job – which is what the Plaintiff is truly complaining about here – would constitute "an adverse effect on working conditions."   The phrase "working conditions" generally refers to things such as vacation time and seniority, rather than simply continued employment.   However, the Court need not resolve this issue, as the Plaintiff has alleged that her working conditions were "vastly affected" by the H-1B visa holders, in that she "had to train the visa holder every day" and that "she was subjected to a hostile work environment where she was being forced to train foreigners to do her job."   (Doc. 42 at 3-4).

Turning to the "displacement" certification in that form, Cognizant argues that this certification is only required of H-1B dependent employers who are bringing in non-exempt workers, and that it made no such certification because the employees it was bringing in to do the work for WDPR were all exempt.[3]  Cognizant is correct as to the law.  *See* 20 C.F.R. § 655.737(a) (stating that displacement attestation requirement does not apply to an employer filing an LCA only for employment of exempt H-1B nonimmigrants).

Moore does not dispute the legal point – i.e., that the LCA's displacement certification requirement only applies in regard to non-exempt workers.   However, she contends that, in her Complaint, she alleged that Cognizant falsely claimed that all of its non-immigrant workers were exempt, when some were actually non-exempt**.  (Doc. 42 at 7).**  But a review of the Complaint – including the paragraphs cited by the Plaintiff in regard to this point – finds no such allegations. To the contrary, the Plaintiff mentions additional attestation requirements in a footnote, and then suggests that Cognizant was not required to make those attestations "because [the additional] attestation requirements do not apply to LCAs filed by the employer solely for the employment of an "exempt" H-1B nonimmigrant".   (Doc. 1 at 5 n. 3).   In other words, the Plaintiff herself asserts that all of Cognizant's H-1B nonimmigrants were exempt.   As such, Cognizant would not have been required to make the "displacement" certification in regard to them.

Finally, Moore alleges that Cognizant also made false statements on ETA Form 750s it submitted as part of the same process.   (Doc. 1 at 5).   Moore attached a blank ETA Form 750 to the Complaint.   (Doc. 1-2 at 17-21).   Section 23 of that form requires that the employer certify that the job opportunity at issue "has been and is clearly open to any qualified U.S. worker," while

---

[3] An H-1B nonimmigrant is "exempt" if he or she is paid at least $60,000 per year and has obtained at least a master's degree in a specialty related to the intended employment.   20 C.F.R. § 655.737.

Section 32 requires a certification that the job opportunity "does not involve unlawful discrimination by race, creed, color, national origin, age, sex, religion, handicap, or citizenship." (Doc. 1-2 at ).   Moore alleges that Cognizant must have filed ETA Form 750s and made false certifications as to those two issues, though she does not explain why such certifications would necessarily have been false.   (Doc. 1 at 5-6, 10).   Cognizant argues in its motion that it did not file any (and therefore did not make any false certifications in such documents) because the law did not require it to do so.   (Doc. 27 at 3-4).   Moore appears to concede that Cognizant is correct as to this point, as she does not contradict it in his response to the motion.

Thus, the Court finds that none of the allegedly false statements put at issue in the Complaint are adequate to support a civil RICO claim.   The first – the working conditions certification in the LCAs – was not false because it did not apply to WDPR employees.   The second – the displacement certification in that same form – would not have been made in regard to exempt workers, and the Plaintiff has pled that Cognizant only brought in exempt workers. And finally, the Plaintiff has apparently conceded that Cognizant was not required to file the ETA Form 750s, which contained the other allegedly false statements.

The failure of these alleged predicate acts is fatal to the civil RICO claim (Count I), which must be dismissed.   Counts II and III are, in essence, claims that Cognizant and WDPR conspired to violate the immigration laws by making these false statements.   Thus, those counts must also be dismissed.   As this is the Plaintiff's initial complaint, the dismissal will be without prejudice.

**IV.   Conclusion**

In consideration of the foregoing, it is hereby

**ORDERED** that on the motions to dismiss filed by Defendant Cognizant Technology Solutions U.S. Corporation (Doc. 25) and Defendant Walt Disney Parks and Resorts U.S., Inc.

(Doc. 35) are **GRANTED** as set forth above, and the Complaint (Doc. 1) is **DISMISSED WITHOUT PREJUDICE**.   Should the Plaintiff wish to file an amended complaint, he must do so on or before October 24, 2016.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on October 13, 2016.



_____
GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party